UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO. 6:24-cv-1954

**JONATHAN DRUMMOND**,

 Plaintiff,

vs.

**SOUTHERN BRAS LLC,**
**a Delaware Limited Liability Company,**

 Defendant.

 /
_____

## COMPLAINT

 Plaintiff JONATHAN DRUMMOND, by and through undersigned counsel,

sues Defendant SOUTHERN BRAS LLC, a Delaware Limited Liability Company,

and alleges as follows:

 1. This is an action for declaratory and injunctive relief, attorney's fees,

costs, and litigation expenses for unlawful disability discrimination in violation of

Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"),

as amended, and 28 C.F.R. Part 36.

 2. This Court has jurisdiction over this case based on federal question

jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks

declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

 3. Venue is proper in this Court as all actions complained of herein and

injuries and damages suffered occurred in the Middle District of Florida.

4.     Plaintiff JONATHAN DRUMMOND is a resident of Volusia County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.     Plaintiff is, and at all relevant times, has been blind and visually disabled in that Plaintiff suffers from retinoblastoma, which is a permanent eye and medical condition that substantially and significantly impairs his vision and limits his ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.     Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7.     Because he is blind, Plaintiff cannot use his computer without the

2

assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8. Defendant is a Delaware Limited Liability Company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of 5 U.S. based steakhouses, offering a range of services designed to provide an authentic Brazilian Churrasco experience in a refined atmosphere, including the steakhouse, Plaintiff intended to patronize in the near

future (and as early as October and/or early November 2024) which is located at 4483 Southside Boulevard, Jacksonville, FL 32216.

9.    Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

10.    Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11.    At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of 5 U.S. based steakhouses under the name "Terra Gaucha Brazilian Steakhouse". Each "Terra Gaucha Brazilian Steakhouse" is open to the public. As the owner, operator, and/or controller of these steakhouses, Defendant is defined as a place of "public accommodation" within the meaning of the ADA per 42 U.S.C §12181 and 28 C.F.R. §36.104.)

12.    Because Defendant is a steakhouse open to the public, each of Defendant's physical locations is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

4

13.    Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.terragaucha.com/ (the "Website"). Some functions of the website provided for users are: to present to the public the information on the locations of the Defendant's steakhouses and their hours of operation, browse the restaurant menu offerings, make online reservations through a dedicated booking system, learn about private spaces and menu packages for group and private dining, submit group reservation requests, purchase gift cards, sign up for offers, news, and important notices, join Terra Club membership, explore their News section, learn about the company's history in the "Our Story" section, discover promotions, events, and offers for special occasions, contact the steakhouse via an online form, and view FAQs for more information about the dining experience.

14.    The Website also services Defendant's physical locations by providing information on available menu items, operating hours, steakhouse locations, contact details, promotions and events, and other information that Defendant is interested in communicating to its customers.

15.    Because the Website allows the public the ability to secure information about the locations of Defendant's steakhouses, browse the restaurant's menu offerings, make online reservations, learn about private spaces and menu packages for group and private dining, submit group reservation requests, purchase gift cards, sign up for offers, news, and important notices, join Terra Club membership, learn about the company's history in the "Our Story"

section, discover promotions, events, and offers for special occasions, contact the steakhouse via an online form, and view FAQs for more information about the dining experience, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical locations, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendant's physical locations, as it serves as a crucial point of sale for the steakhouses. It allows users to view menu items, make reservations, and book private events, which can also be arranged at and through its physical locations.

16.     Because the public can view and use Defendant's services through the Website, thus the Website acts as a critical point of access for Defendant's services that are also available at Defendant's physical locations, browse the restaurant's menu offerings, make online reservations through a dedicated booking system, learn about private spaces and menu packages for group and private dining, submit group reservation requests, purchase gift cards, sign up for offers, news, and important notices, join Terra Club membership, explore their News section, learn about the company's history in the "Our Story" section, discover promotions,

events, and offers for special occasions, contact the steakhouse via an online form, and view FAQs for more information about the dining experience, the Website is an extension of, and gateway to the physical locations, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical locations.

17.    At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

18.    Plaintiff is and/or has been a customer who is interested in

patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as October and/or early November 2024), Defendant's steakhouse located at 4483 Southside Boulevard, Jacksonville, FL 32216, and to search for brick-and-mortar locations that are in closest proximity to Plaintiff, explore the steakhouse menu, make an online reservation, learn about private spaces and menu packages for group and private dining, submit group reservation requests, purchase gift cards, sign up for offers, news, and important notices, access their news section, learn about the company's history in the 'Our Story' section, discover promotions, events, and offers for special occasions, learn about restrictions and information applied to each event, contact the steakhouse via an online form, and view FAQs for more information about the dining experience. In the alternative, Plaintiff intends to monitor the Website in the near future (and as early October and/or early November 2024) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19.    The opportunity to view and use Defendant's services, learn about the steakhouse locations and locate the nearest one, browse the restaurant's menu offerings, make online reservations through a dedicated booking system, learn about private spaces and menu packages for group and private dining, submit group reservation requests, purchase gift cards, sign up for offers, news, and important notices, join Terra Club membership, explore their News section, learn about the company's history in the "Our Story" section, discover promotions,

events, and offers for special occasions, contact the steakhouse via an online form, and view FAQs for more information about the dining experience, and more from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan his restaurant visits and to compare offerings, prices, services, and promotions. Plaintiff may look at several dozen websites to compare features, services, promotions, and prices.

21.     Beginning in September 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the services and online offers to educate as to the menu items, services being provided, learn about the physical steakhouse locations, check operating hours, and subscribe to the mailing list to receive offers, news, and important notices firsthand. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

22.     Plaintiff, who enjoys exploring local restaurant and various traditional cuisines, intended to visit a local restaurant with a rich meat menu. As

a result, on or about September 30, 2024, he conducted a Google search and found the Defendant's steakhouse, which offers a Southern Brazilian Churrasco experience. Using NVDA screen reader to navigate the Defendant's website, Plaintiff encountered multiple accessibility issues. Notably, there was no Bypass block, and while navigating the main page, Plaintiff became confused by excessive content updates in the carousel region. The carousel's "aria-live" attribute caused the screen reader to continuously announce updates, leading to disorientation. When attempting to make a reservation, after selecting his preferred options and pressing the 'Check Availability' button, a dialog box with further reservation options appeared. However, the screen reader did not move the focus to this dialog box, and no information was announced. As a result, Plaintiff was unaware of the presence of the dialog box and could not proceed with the reservation, leaving him unable to complete the booking on the website.

23.   Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a.  "Skip to content" link was not implemented. Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

b.  Landmarks were not properly inserted into the home page. Plaintiff attempted to navigate the home page using landmarks but was unable to access its main regions due to inaccurate landmark markup. Specifically, the "main" and "content info" landmarks were missing;

c.  Prerecorded video-only found on the web page. Text transcript or audio track for a silent video was not provided and Plaintiff did not receive any information from the non-text content placed on the page;

d.  While navigating the home page, Plaintiff was significantly confused by the excessive updating of the content of the carousel region. Carousel region with "aria-live" attribute forced the screen reader to announce the constant update of the moving content. Plaintiff was disoriented and mistakenly perceived the unexpected announcement as a change in keyboard focus;

e.  The carousel region lacked a mechanism to pause moving content. A mechanism should be provided to allow users to read the moving content in a static format. This mechanism must be accessible via assistive technology and the keyboard to ensure full accessibility compliance;

f.  Interactive elements from the website could not be focused with the Tab key. The website did not provide helpful instructions on how to access the interactive elements using arrow keys. Plaintiff did not know about the interactive elements from the page; for example, as with buttons for controlling the carousel region content;

g.  Plaintiff tried to follow the links from the website and received no prior warning that the links would open in new windows. As a result, Plaintiff unsuccessfully attempted to use the 'Back' function of the browser to return to the previous page and became disoriented; for example, when trying to open social media links;

h.  Plaintiff was forced to repeatedly tab through elements that led to the same destination. The images above the link text for menu types both directed to the same location, resulting in redundant navigation;

i.  Images on the website did not have alternative text, preventing Plaintiff from receiving any description of the non-text content. For example, images of menu items lacked alt text, meaning that no information about the images was conveyed to the Plaintiff via the screen reader, creating accessibility barriers;

j.  Interactive elements on the web page had inappropriate and non-descriptive names, making it difficult for Plaintiff to identify their purpose. For example, a 'clear' button did not provide any context, leaving Plaintiff unsure of its function;

k.  When opening a dialog, the focus order did not move from the trigger button to the dialog items. When Plaintiff pressed "Check Availability" button, a dialog box appeared, but the focus did not shift to the dialog box. As a result, Plaintiff was confused and unable to proceed with the reservation;

l.  The video on the Group & Private Dining page did not include an audio or text description. As a result, Plaintiff felt disoriented, unable to understand the content of the video or determine what important information might have been missed due to the lack of accessibility features;

m. Unclear and ambiguous labels for form fields impeded Plaintiff from correct information input. Plaintiff was unaware of the purpose of the interactive elements and could not understand what information was required;

n.  The telephone number on the website was presented in plain text, and therefore was non-interactive and inaccessible to the screen reader software. As a result, Plaintiff was unable to contact the steakhouse for support;

o.  The email addresses presented on the website were not interactive and were inaccessible to screen reader software. As a result, Plaintiff was unable to contact the steakhouses through the provided email addresses.

24.    Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct Plaintiff to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, and communicating with, the Website. Although the Website appeared to have an "accessibility" statement linked from its home page, that "accessibility" statement, when tested, still could not be effectively accessed by, continued to be a barrier to, and did not provide a viable alternative means to fully and equally access and navigate the Website for blind and visually disabled persons, including Plaintiff. Plaintiff, thus, was unable to receive any meaningful or prompt assistance through the "accessibility"

statement to enable Plaintiff to equally, quickly, fully, and effectively navigate the Website.

25. Accordingly, Defendant's Website was incompatible with Plaintiff's screen reading software and keyboard.

26. The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same shopping experience, with the same access to the offers and services, as provided at the Website and in the physical locations as the non-visually disabled public.

27. Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's steakhouse located at 4483 Southside Boulevard, Jacksonville, FL 32216, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendant due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

28.     Because of the nexus between Defendant's physical locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical locations for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical locations, which are places of public accommodation subject to the requirements of the ADA.

29.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

31.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the

Website by individuals with disabilities.

33.    On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

34.    On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

35.    On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

36.    Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37.    The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

38.    Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of using Defendant's services offered on the Website and in the physical locations from their homes.

39.    Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and

accommodations provided by and through the Website and the locations in contravention of the ADA.

40.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

41.     The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.  That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

42.     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

43.     Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

44.     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

16

46. Notice to Defendant is not required because of Defendant's failure to cure the violations.

47. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48. Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

49. Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50. Pursuant to 42 U.S.C. §12181(7), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

51. Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's steakhouses, browse the restaurant's menu offerings, make online reservations through a dedicated booking system, learn about private spaces and menu packages for group and private dining, submit group reservation requests, purchase gift cards, sign up for offers, news, and important notices, join Terra Club membership, explore their News section, learn about the company's history in the "Our Story" section, discover promotions, events, and offers for special occasions, contact the steakhouse via an online form, and view FAQs for more information about the dining experience. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's

steakhouses. Further, the Website serves to augment Defendant's physical locations by providing the public information about the restaurants and by educating the public as to Defendant's available services offered through the Website and in, from, and through the physical locations.

52.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54.    In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other

individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55.     Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in the physical locations in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq.*

57.     Further, Plaintiff has engaged an ADA website compliance expert herein, Robert D. Moody, to review Defendant's Website and confirm that the issues that Plaintiff encountered on the Website do, in fact, exist and are, in fact, barriers to accessibility for the visually-impaired. Mr. Moody's Expert Declaration is attached to this Complaint as Exhibit "A."

58.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

59.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

60.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, implementing a bypass block for easier navigation, ensuring that focus automatically shifts to dialog boxes when they appear on the screes, and providing clear, properly labeled form fields. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

61.    Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

62.    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

63.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an

effective method of making visually delivered material available to individuals who are blind or have low vision.

64.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

65.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

66.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

67.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical locations.

68.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

69.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical locations through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with

the Website for purposes of viewing and locating Defendant's physical locations and becoming informed of and purchasing Defendant's services, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical locations.

70.    Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

## COUNT II – DECLARATORY RELIEF

71.    Plaintiff re-alleges paragraphs 1 through 70 as if set forth fully herein.

72.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its physical location and Defendant's Website, which Defendant owns, operates and controls, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*

73.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.  A declaration that Defendant's Website is in violation of the ADA;

B.  An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

---

1  or similar.

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable

25

accessibility guidelines;

I.   An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.   An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.   An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L.   Such other and further relief as the Court deems just and equitable.

DATED: October 29, 2024.

**ALEKSANDRA KRAVETS, ESQ. P.A.**
Lead Counsel for Plaintiff
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By: ___*/s/ Aleksandra Kravets, Esq.*
      Aleksandra Kravets, Esq.
      FBN: 120562